U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

# IN UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Shawanda V Collins<br><br>      Plaintiff,<br>vs.<br><br>Graceland Cemetery Association,<br>Trustees of the Graceland Cemetery<br>Improvement Fund,<br>and<br>William Hoffmann individually and<br>his official capacity,<br><br>      Defendants. | Case No.:<br><br>CLERK OF COURT<br>**26-C-0719**<br><br>**COMPLAINT** |

## I.    PRELIMINARY STATEMENT

1.    This is an action seeking an injunction, compensatory, punitive damages, declaratory and equitable relief for violations of 42 U.S.C. § 1981 Discrimination in Contract/Enforcement, 42 U.S.C. § 1982 Race Discrimination in Property Rights, Violation of Wisconsin Public Accommodations Law (Wis. Stat. § 106.52), Breach of Contract / Promissory Estoppel, Intentional Infliction of Emotional Distress (IIED) and State analogs. Plaintiff seeks mandatory injunctive relief, reparation, damages to redress the discriminatory practices as engaged in by the Defendants, compensatory and punitive damages.

2.    Plaintiff, an African American individual, brings this action to redress intentional racial discrimination, interference with property rights, breach of contract, and emotional harm caused by Defendants Graceland Cemetery Association, the Trustees of the Graceland Cemetery Improvement Fund, and cemetery manager William Hoffmann.

## II. JURISDICTION AND VENUE

3.    This Court has jurisdiction over this matter under 42 U.S.C. § 1981. This Court also has jurisdiction under 28 U.S.C. §1331, §1343 and §2201. This Court has supplemental,

Case 2:26-cv-00719-BHL    Filed 04/24/26    Page 1 of 11    Document 1

pendency jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in the Eastern District of Wisconsin under 42 U.S.C. §2000e-5(f)(3), 28 U.S.C. §1391(b) and §1391(d) in that the claims arose in this judicial district, and all Defendants reside and maintain significant operations within the Eastern Division. This case is appropriate for the assignment in the Milwaukee Division as the Defendants reside in Milwaukee County and principal offices are in Milwaukee County which is in the district and all acts of discrimination occurred within this District.

## II. PARTIES

5. Ms. Collins is an African American female individual residing in Milwaukee, Wisconsin.

6. Defendant Graceland Cemetery Association is the entity that publicly operates and holds itself out as "Graceland Cemetery," providing burial plots, foundation installation, and monument approval services to the public with its principal place of business located at 6401 N. 43rd Street Milwaukee, WI 53209

7. Defendant Trustees of the Graceland Cemetery Improvement Fund are the trustees responsible for the ownership, maintenance, governance, and operational policies of the cemetery grounds with its principal place of business located at 6401 N. 43rd Street Milwaukee, WI 53209. They are sued in their official capacities.

8. Defendant William Hoffmann is the cemetery manager who personally participated in, directed, and enforced the discriminatory conduct described herein. He is sued

individually and in his official capacity with an office at 6401 N. 43rd Street Milwaukee, WI 53209

### III. COMMON FACTS

9. Paragraphs one (1) through eight (8) are incorporated by reference as if fully set out herein.

10. On July 15, 2025 Plaintiff spoke with Michelle Baldwin stating she is ready to proceed with her loved ones Veronica Lee Collins and Keishon Demarcus Joseph Thomas headstone. Plaintiff stated her loved ones' headstone is to be no lower than the adjacent stone. Ms. Baldwin stated she would talk to the manager to let him know. However, on July 16, 2025 when Toni the headstone maker called to verify the size. Graceland informed her that the headstone could not be more that 28 inches tall. She stated they will not let you max out the two feet four inches tall. On July 17, 2026 Plaintiff meet with Ms. Baldwin, she would advocate that the adjacent stones were are well passed that high. These headstones belonged to Hmong and Asian families. Unfortunately, the Manager, William Hoffmann did not approve the plaintiff's loved ones' headstone being the same height and weight as headstone in the same area. Ms. Collins hand delivered William Hoffmann a letter noting the appearance of bias and racism. William Hoffmann then agreed to measure the adjacent headstone and agreed that the Plaintiff's loved ones' headstone can be the same size. Ms. Collins personally paid William Hoffmann for a foundation intended to match the height and grade of the adjacent markers and provided vases to be place on each side of the foundation.

11. On July 23, 2025 God Granted Memorial's owner Toni called Ms. Collins again stating Graceland Cemetery will not approve the height and weight of the headstone. Ms. Collins met with William Hoffmann again this time requesting he speak to Toni the headstone maker to

give approval. The call was made and the headstone was approved. Unfortunately, Toni could not acquire the beautiful Blue Pearl granite headstone the Plaintiff wanted and a new headstone maker was selected.

12. This time a local headstone maker Mike of Wenta Monument. On August 25, 2025 the Plaintiff received a message from Mike of Wenta Monument stating Graceland Cemetery stated the headstone's overall height can only be 28". Plaintiff requested Mike call Graceland Cemetery and speak to Bill which is William Hoffmann. On August 26, 2025 Plaintiff received another message from Mike of Wenta implying that he had spoken to Bill and Bill confirmed the limited 28" height. On August 26, 2025 Plaintiff called Graceland Cemetery and was informed that Bill would be out for the rest of the week. On August 28, 2025 Plaintiff happened to go to the offices after visiting her loved ones resting place and saw William Hoffmann. Plaintiff asked to meet with him. Bill stated he would call Mike to confirm the 43' height. Plaintiff insisted the call be made in her presence. The call was made and William Hoffmann confirmed the agreed-on height and weight as the adjacent headstone.

13. On September 2, 2025 and Mike of Wenta stated that the headstone to order is Blue Pearl granite, all polished tablet 43"x08"x37", however, September 23, 2025 after Mike went to Graceland Cemetery and took measurements of the adjacent stone, he left a message the height is actually 48"

14. On September 11, 2025 Plaintiff sister Antonette Marie Collins was buried along side Plaintiff's Mother and Nephew. Plaintiff noticed the foundation for her mom and nephew's headstone was complete however, the foundation was laid lower than the grass level. Pictures of the site before the foundation was laid actually show a more leveled ground with the adjacent

headstone. On September 18, 2025 Plaintiff spoke with Bill who basically blew her off then stated he would take a look.

15. Bill, Mike and the Plaintiff met at the Plaintiff's loved ones' gravesite. Mike the stone maker agrees that Plaintiff's loved ones' headstone would be much lower once the foundation settled and the foundation is below grass level, not leveled with the adjacent headstone. Bill refused to redo the foundation. Mike suggested a base, Bill agreed. The Plaintiff agreed as along as it is aesthetically beautiful.

16. In the first week of March 2026 Plaintiff want to view her loved ones' grave site after the winter and it appeared that the foundation had been actually lowered. The ground around just that site was heavily saturated and still wet. Plaintiff went to the office and Bill was not in but the Assistant Manager Craig was in and accompanied Plaintiff to the site. While at the grave site the Plaintiff was informed that bases are "not allowed" in this area.

17. Plaintiff contacted Mike the stone maker and he in turn contacted Bill who now stated bases are not allowed.

## IV. FACTUAL ALLEGATIONS

### A. Purchase and Contractual Relationship

Paragraphs one (1) through seventeen (17) are incorporated by reference as if fully set out herein.

18. Plaintiff purchased a burial plot and contracted for a headstone and foundation for Plaintiff's loved one. Plaintiff paid for a foundation intended to match the height and grade of the adjacent markers.

### B. Racially Selective Enforcement of a False Height Rule

19. Ms. Collins called Graceland between July, 2025 and September, 2025 approximately twelve times and spoke to several Graceland employees who informed her that the headstone can be no more than 26 to 28inches. For months, Defendants categorically denied Plaintiff's request for a 43-inch headstone, falsely claiming a 26 to 28-inch height limit.

20. This "rule" was selectively enforced. Numerous Hmong/Asian families in the immediate vicinity including the marker directly adjacent to Plaintiff's plot have 43 to 48-inch markers.

21. No non-Black families were subjected to the alleged 26 to 28-inch limit.

22. Plaintiff explicitly informed Defendants that the denial was discriminatory.

23. Plaintiff possesses audio recordings documenting Defendants' repeated refusals and shifting explanations.

**C. Prolonged Humiliation and Forced Pleading**

24. For months, Defendants forced Plaintiff to repeatedly plead and "beg" for equal treatment, despite Plaintiff pointing out that non-Black families in the same row had 43- 48-inch markers. This prolonged and unnecessary obstruction caused Plaintiff humiliation, emotional distress, and dignitary harm, particularly given the sensitive nature of arranging a memorial for a deceased loved one.

25. Defendants' conduct was not a misunderstanding or administrative delay. It was a sustained pattern of forcing an African American family to repeatedly return, plead, and justify a request routinely granted to non-Black families without question. This differential treatment caused Plaintiff profound humiliation and emotional harm.

**D. Repeated Interference With Stone Makers**

26.     After months of resistance, Defendants verbally agreed to allow a 43-inch stone to match the neighboring markers.

27.     However, when Plaintiff's first stone maker called for approval, Defendants denied the agreement, contradicting what they told Plaintiff. Plaintiff was forced to physically go to the manager's office and require the manager to call the stone maker in Plaintiff's presence to confirm the approval.

28.     When Plaintiff changed stone makers, Defendants again denied the approval until Plaintiff personally confronted the manager a second time.

29.     This pattern demonstrates intentional obstruction, humiliation, and bad faith.

**E. Physical Sabotage of the Foundation**

30.     After finally agreeing to the 43-inch stone, Defendants intentionally poured the foundation below grass level, ensuring that Plaintiff's marker would appear shorter than the neighboring non-Black markers.

31.     Standard cemetery practice in Wisconsin requires foundations to be installed flush with the ground line to prevent sinking, maintain stability, and ensure aesthetic alignment. Defendants deviated from this standard only for Plaintiff.

32.     When Plaintiff requested that the foundation be raised to the proper height, Defendants refused, offering shifting and contradictory pretexts, including:

- "Uneven ground," despite cemeteries routinely leveling ground with fill dirt;

- A previously undisclosed "base ban," despite earlier approval of a base;

- A "tacky cement foundation cap" that does not match the pearl blue granite and would visibly degrade the memorial.

**F. Global Causation: But-For Plaintiff's Race**

33. All of the discriminatory actions described herein including the false height restriction, months of forced pleading, obstruction of stone makers, contradictory explanations, and physical sabotage of the foundation occurred solely because Plaintiff is African American. Non-Black families in the same section received immediate approval, standard installation practices, and full-height markers without obstruction. But for Plaintiff's race, none of these harms would have occurred.

## G. Intentional Racial Devaluation

34. Defendants' actions ensured that Plaintiff's loved one's marker would remain physically lower, aesthetically inferior, and visibly segregated from the neighboring Hmong/Asian markers.

35. Defendants' conduct was intentional, malicious, and motivated by racial animus, as evidenced by:

- Selective enforcement of a false rule;

- Repeated obstruction of two separate stone makers;

- Contradictory explanations captured in audio recordings;

- Physical sabotage of the foundation;

- Refusal to perform standard leveling practices routinely provided to non-Black families;

- Months of forcing Plaintiff to "beg" for equal treatment.

## V. CLAIMS FOR RELIEF

### COUNT I Violation of 42 U.S.C. § 1981 (Race Discrimination in Contracting)

36. Paragraphs one (1) through thirty-five (35) are incorporated by reference as if fully set out herein.

37. Defendants intentionally discriminated against Plaintiff in the making, performance, and enforcement of contractual rights by:

- Denying the height request based on race;

- Reversing approvals to stone makers;

- Forcing Plaintiff to physically confront the manager to obtain basic contractual performance;

- Sabotaging the foundation to nullify the agreement;

- Subjecting Plaintiff to months of humiliating pleading for equal treatment.

38. But for Plaintiff's race, Defendants would not have obstructed the contract, imposed false rules, or installed a recessed foundation.

**COUNT II Violation of 42 U.S.C. § 1982 (Race Discrimination in Property Rights)**

39. Paragraphs one (1) through thirty-eight (38) are incorporated by reference as if fully set out herein.

40. Defendants denied Plaintiff the same right as white and non-Black citizens to hold, use, and enjoy real property by physically lowering the foundation and refusing to correct it.

41. Defendants created a racially disparate memorial landscape in which non-Black families' markers stand at full height while Plaintiff's is intentionally recessed.

42. But for Plaintiff's race, Defendants would have installed the foundation at the proper grade, as they routinely do for non-Black families.

**COUNT III Violation of Wisconsin Public Accommodations Law (Wis. Stat. § 106.52)**

43. Paragraphs one (1) through forty-to (42) are incorporated by reference as if fully set out herein.

44. Graceland Cemetery is a public place of accommodation under Wisconsin law.

45. Defendants denied Plaintiff full and equal enjoyment of cemetery services on the basis of race by:

- Enforcing a false height rule only against African American families;
- Obstructing stone makers;
- Sabotaging the foundation;
- Refusing standard leveling practices;
- Offering only inferior, non-matching "fixes";
- Forcing Plaintiff to "beg" for equal treatment for months.

46. Plaintiff suffered humiliation, emotional distress, and dignitary harm as a result.

**COUNT IV Breach of Contract / Promissory Estoppel**

47. Paragraphs one (1) through forty-six (46) are incorporated by reference as if fully set out herein.

48. Defendants agreed to install a foundation matching the height and grade of the adjacent markers.

49. Plaintiff relied on this promise and paid for the foundation.

50. Defendants intentionally breached the agreement by installing the foundation below grade and refusing to correct it.

51. Plaintiff suffered financial loss, emotional distress, and dignitary harm.

**COUNT V Intentional Infliction of Emotional Distress (IIED)**

52. Paragraphs one (1) through fifty-one (51) are incorporated by reference as if fully set out herein.

53. Defendants' conduct including months of obstruction, humiliation, racial targeting, and physical sabotage of a burial memorial was extreme and outrageous.

54. Defendants intended to cause emotional harm or acted with reckless disregard for the likelihood of causing such harm.

55. Plaintiff suffered severe emotional distress, humiliation, and dignitary injury.

## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

59. Issue an injunction requiring Defendants to raise the foundation to grass level and leveled with adjacent headstone at Defendants' expense.

60. Award compensatory damages for emotional distress, humiliation, dignitary harm, and financial losses.

61. Award punitive damages for Defendants' willful, malicious, and racially motivated conduct.

62. Award costs and any other relief the Court deems just and proper.

Dated: April 24, 2026.

Respectfully submitted,

Shawanda V Collins, Plaintiff
PO BOX 11904
Milwaukee, WI 53211
312-870-0174